The opinion of the Court was delivered by
Wardlaw, J.
The case of The State vs. Darby, 7 Rich. 363, decided after a careful examination of previous cases, conclusively settles that under proceedings in bastardy, commenced before the child has attained the age of twelve years, the father may, upon conviction, be required to enter into recognizance for payment of twenty-five dollars a year, counting from the birth of the child until its attainment of twelve years of age.
The State vs. Compton, MSS., cited and fully reported in The State vs. Darby, decided nearly forty years ago that the Act limiting the time for recovery of penalties by prosecution (3 Stat. 701) does not extend to the payment exacted from the father of a bastard child; and so the law has ever since been administered; for the Act of 1839 (Mag. Act, § 12) contains the same words, “ at any time after the birth,” which, found in the Act of 1795, (5 Stat. 270,) were regarded by Judge D. Johnson as conclusive.
The order which allowed to the defendant credit for ninety dollars, settled by the verdict as the amount of his advances made for maintenance of the child, is conformable to an intimation given in The State vs. Darby; and the complaint here made, with respect to the time of the credit, has no just *33 foundation; for interest is not charged against the defendant upon the arrears due by him, and the time of the credit is, therefore, immaterial.
The defendant, it is*-said, was never arrested, and it is vehemently urged that injustice was done to him by the holding that his appearance and pleading effected a waiver'of objection to the irregularity of proceedings by which he was brought in. He appeared, he made his defence, he recognized the advocacy of his counsel on the circuit, and through them he has been heard here. The conviction, if properly had, is then binding on him, although if there are no sureties for his personal presence when that may be further required, he may, without forfeiture, elude the enforcement of the judgment of the Court, until he can be arrested by bench warrant. The case is very different from one where a defendant, never arrested nor bound over, is inadvertently tried in his absence. See State vs. Hatcher, 11 Rich. 525.
But- by voluntary appearance no moré than by compulsory attendance was the defendant deprived of any ground of de-fence ; and to any departure from' a course prescribed by law he was at liberty to object under the general issue. His objection is that the bill of indictment against him was not found before a bench warrant was issued. Suppose this to be so, and further suppose that, for this and other reasons,'-the bench warrant was irregular and void, it would follow that his arrest under that warrant was unlawful, that his recognizance, if he gave one, might be impeached for duress, and that his counsel might have moved for his discharge from arrest and recognizance. But his counsel appeared and pleaded, and he was present and made defence. Nothing which preceded could destroy the effect of this acknowledgment of the jurisdiction of the Court over his person and his case; and, when urged as matters of technical objection on the trial, the supposed irregularities must have- been wholly unavailing. The twelfth section of the Magistrates’ Act of 1839, to remedy *34 »the evil which had grown up from persons charged with bastardy eluding constables, and the constables holding the papers so that the cases escaped the notice of the solicitor, directed .that, “ It shall be the duty of the constable to return the same to the Clerk of the Court, as other session papers, with a special note thereof by way of return on oath, whereupon a bill of indictment may be given out, and if found, a bench warrant may issue.” It was not intended to distinguish cases of bastardy from other cases of misdemeanor, but to stimulate and direct constables, whose failure to arrest had probably attracted notice more in cases of bastardy than in other cases. In any misdemeanor there may be bill found before arrest, and in any a bench warrant may follow the bill, if there has been no previous arrest. A literal construction of the twelfth section, without reference to the general rules of law, would forbid the letting to bail, on recognizance for his appearance at the trial, any person charged with bastardy who denied the charge, for he is to be “ committed to prison, there to remain until he shall enter into such recognizance,” . (for the maintenance of the child;) “ but should he be unable to comply with the requisitions herein before mentioned, or should he deny that he is the father of the said child, a jury shall be charged,” — “on his acquittal he shall be discharged, or if convicted be required to give the security,” — “ or in default be bound to service.”
As we understand the case, and the defendant’s complaints, from the papers which have been exhibited to this Court, the child was born in Union District, and a magistrate’s warrant was issued there in April, 1858 ; the defendant, living in York District, was not arrested until what is called a bench warrant was issued by the Clerk of York. That warrant sets forth that at Spring Term, 1859, for York, a bench- warrant was ordered against Obadiah Sarratt, to answer at the Court of Sessions, on, &c., at Union Court-House, to a bill of indictment to be preferred against him for bastardy. It is dated in ' *35 May, 1859, and the name of the solicitor is affixed to it, as to all session papers issued by a Clerk under the seal of his Court. Under this warrant it is said that the defendant was arrested, and gave recognizance for his appearance at Union the next term, when the bill against him was found. Now it is very true that, upon proper affidavit, a magistrate of York might hhve issued a warrant to arrest the defendant for an offence committed in Union, and might have bound him in recognizance for his appearance at Union; or that a warrant issued by a magistrate of Union might have been backed, as it is phrased, by a magistrate of York, and have been executed. But it is no less trugs that a Judge of the Superior Court of General Sessions may, upon proper affidavits, issue under his hand and seal, in any district of the State, a warrant to procure the appearance in any other district of a person accused; and that such Court in any district may, upon proper evidence, order a bench warrant with like effect. This warrant, if issued by the Clerk without order, was irregular; but an order Such as is set forth, and as we must presume was made, justified the Clerk, and gave validity to the warrant. That under the Act of 1839 a bench warrant would have gone forth of course from Union after bill found, does not at all impair the discretionary powers which pertain to the Court of General Sessions, and to every Judge of it, for the advancement of justice.
The motions are dismissed.
Dunkin, C. J., and Inglis, A. J., concurred.

Motions dismissed.